## WILT *v.* GRIER.

*(Circuit Court, D. Delaware. January 29, 1881.)*

1. MECHANICAL EQUIVALENTS—SAME RESULTS.

Where a person procures a patent for the building of a machine, which produces certain results which are novel and useful, by means of certain mechanical contrivances and appliances, any person who attempts to accomplish the same results by mere substitutions, which are equivalents of the means employed by the first patentee, is an infringer.

2. SAME—DIFFERENCE IN FORM.

Any application of known mechanical powers which will produce that result, although different in form from the means employed by the original patentee, is a mechanical substitute and equivalent of the same.

In Equity.

*Worth Osgood,* for complainant.

*George P. Fisher,* for defendant.

BRADFORD, D. J. This is a bill in equity, brought by the complainant, Wilt, against the defendant, Grier, for alleged infringement of said Wilt's letters patent No. 190,368, issued May 1, 1877, originally to A. Quincy Reynolds, of Chicago, Ill., and by him transmitted by mesne assignments to the complainant.

This patent is for an improvement in automatic fruit driers, and its peculiarity and novelty consist in mechanical arrangements and devices by which a stack of trays, fitting into each other, the outer edges of which constitute the outer side of the stack of trays, or drying-house, are moved upwards, and suspended by attachments to the lower tray, in order that a fresh tray of fruit can be inserted at the bottom, and the process repeated at pleasure, thus building up the drying-house or stack from the bottom.

It is not contended that the patentee is the inventor of the movable trays, the outer walls of which constitute the dry-house. It is admitted the existence of such trays, for such purpose, is old in the art; but the complainant contends that the patentee is the originator of an idea, which is a novel and useful one, of raising the stack of trays from a point on the lowermost tray of the stack, thus making an opening for the insertion of a fresh tray containing fruit, and in this manner building the stack up from the bottom, instead of from the top. This is accomplished by arrangements and devices shown and described in his drawings and specifications.

The defendant, Grier, admits that he has manufactured automatic fruit driers embodying the above ideas, but justifies his action under the authority granted him in letters patent No. 221,056, issued February 14, 1880. So that the question in controversy is a question of fact, whether or not the defendant, in making fruit driers in accordance with his patent No. 221,056, has infringed the complainant's rights under the aforesaid patent No. 190,368.

Now, while it is true, as a matter of law, that the issuance of a patent gives a *prima facie* right to the claimant to operate under that patent, it is by no means conclusive, but is subject to investigation by the proper courts when questioned by a party whose rights are claimed to be infringed thereby.

The right which is the subject-matter of this alleged infringement is to be found set forth in the complainant's fourth claim of his patent No. 190,368, and is in the following words: "In combination with a fruit drier, the outer wall of which is made up of the frames of the several trays, as explained, a suspending device, operating substantially as described, and supporting said drier from a point in or on the lowermost tray thereof, for the objects named."

Referring to the drawings and specifications for the meaning of the words "substantially as described," as applied to the term "suspending device" in said claim, we find that the complainant does not confine himself to the precise means indicated by the words of the claim; for he expressly says: "And I desire to be understood as not limiting my invention

\* \* \* to any particular method of suspending the same," referring to the means of suspension of the stack as well as to the wheels of the drier. And again he says: "Figure 1 is a partial section and elevation of my improved fruit drier, showing the same as being located over an ordinary stove, and illustrating a simple means of elevating the machine," (par. 2;) and again: "The swinging crane and windlass combined is regarded as the simplest means likely to be employed for elevating the drier," (par. 8.) So that the complainant has not limited himself to any terms in his specification and claims to the employment of only the means and devices for suspending or elevating the stack, as shown by his specifications and drawings, but he has left open to himself the use of other means which might occur to him as more convenient and better adapted to the "purposes intended" than the mechanism shown by the drawing; the object and value of the patent consisting not in the use of any special machinery for elevating the stack for the purposes intended, but the elevation and opening of the said stack at the bottom for those purposes by any machinery best calculated to attain that end.

The complainant has evidently acted under the idea that he was at liberty to change the devices for elevating the stack; for his machine as manufactured and sold, and exemplified by Exhibit C in this cause, exhibits devices and arrangements for accomplishing this result different in form and structure from the machine as represented in the drawings and specifications attached to his patent.

The court is, therefore, of the opinion that any attempt by defendant, or any other person, to elevate the stack of trays so constructed as aforesaid, and from a point at or on the lowermost tray thereof, so as to insert new trays at the bottom successively, by any mechanism whatever, adapted to accomplish that purpose, and which is a mechanical equivalent to the means employed by the complainant, is an infringement of his patent.

Has the defendant, Grier, substituted machinery and devices in his machine which are the mechanical equivalents of the mechanism and devices employed by the complainant to ac-

complish the same result in the elevation of the stack of trays, from a point in or on the lowermost tray thereof, so as to permit the insertion of a fresh tray at the bottom? This question can be best answered by referring to the opinions of the courts upon the meaning of the term "mechanical equivalents." Thus, in *Carter* v. *Baker*, 4 Fisher's Pat. Cases, 404, Mr. Justice Sawyer says: "When, in mechanics, one device does a particular thing, or accomplishes a particular result, every other device *known* and *used* in mechanics, which skilled and experienced workmen know will produce the same result, or do the same particular thing, is a known mechanical substitute for the first device mentioned for doing the same thing, or accomplishing the same result, although the first device may never have been detached from its work and the second one put in its place. It is sufficient to constitute known mechanical substitutes, that when a skilful mechanic sees one device doing a particular thing, that he knows the other devices, whose uses he is acquainted with, will do the same thing."

Mr. Justice Curtis, a high authority upon the subject of patent law, in *Foster* v. *Moore*, 1 Curtis, 279, holds that "the doctrine of mechanical equivalents * * * is not confined by the patent law to those elements which are strictly known as such in the science of mechanics, but that it embraces those substitutions which, as a matter of judgment in construction, may be employed to accomplish the same end." See, also, as illustrating the principle of mechanical equivalents, the opinion of *Alderson*, B., in *Morgan* v. *Seaward*, Web. Pat. Cas. 170.

We are now in a condition to make the further and final inquiry, whether the defendant has infringed the rights secured to the complainant by his patent No. 190,368.

The two machines, as will be manifest upon reference to the specifications and drawings in the respective patents, are alike in principle, having a stack in each case composed of sections of trays, fitting upon and into each other, the outer wall of which makes up and forms the exterior of said stack or drying-house; and they are also alike in their purpose and

capacity of being moved upward from a point in or on the lowermost tray, and of being suspended in that position, so as to admit the insertion of fresh trays in succession. They are unlike in their respective appliances and devices by which these objects are accomplished, and also in the facility by which intermediate trays between the top and bottom can be removed.

The devices by which the elevation of the stack of trays in the complainant's patent are elevated in the manner described for the purposes mentioned, are the cord and pulley, passing over an upright crane regulated by a windlass, or wheel and axle, with its ratchet and pawls as shown in one model—the point of suspension in this instance being directly over the centre of the stack; and from the ends of the cross-bars, to which the rope passing through the pulley is attached, depend ropes or chains, which are attached by hooks to handles upon the lowermost tray to be removed, thus contributing both a lifting and suspending device, as shown by this model.

The means adopted in the other model, complainant's Exhibit C, which the complainant claims is authorized by his patent as within the scope of the powers granted therein, consist of a wooden frame supporting the stack of trays as before described, said wooden frame sliding up and down grooves in two opposite stationary posts, as power may be applied to move it, and connected by chains to a chain passing over pulleys in two upright posts at opposite sides of the stack; the respective ends of said chains being attached to the short arms of two levers, the fulcrum of each lever being attached to the lower part and outer side of said upright posts; the longer arms of said levers being connected with other chains passing over a drum or shaft regulated by its pawl and ratchet.

By the last-mentioned device, the novel and useful invention described in complainant's patent of elevating the stack of trays, as aforesaid, by the application of power at a point in or on the lowermost tray thereof, so as to permit the insertion of a fresh tray at the bottom, is accomplished.

The machine embodying the defendant's invention, under

letters patent No. 221,056, is illustrated by model, defendant's Exhibit No. 5, and exhibits the following means for effecting the elevation of the stack of trays, and their suspension, for the purpose of allowing new trays to be inserted at the bottom, to-wit: four movable uprights, each having a series of pivoted pawls, and arranged to slide in four stationary posts, secured in a frame, in combination with a series of boxes, or trays, having notches in their sides, whereby the boxes may be lifted independently of each other, or all together. The power is applied through the medium of two worms, situated at each end of a drum, or shaft, extending along the side of, and at least the width of, the stack to be lifted. These worms engage into appropriate cog-wheels, affixed to two other drums, or shafts, running at right angles to the first-named shaft, on opposite sides of the stack, and extend horizontally the length of the same. Upon each of these last-mentioned shafts are geared, at the ends of the same, small cog-wheels, which, in turn, gear into vertical rack-bars on the four sliding posts of the machine. The power is applied by means of a crank at the end of the first-named drum or shaft.

Now, here is undoubtedly a contrivance and device by which the novel and useful invention first patented in the Reynolds patent, from whom claimant derived his title, of elevating the stack of trays from a point in or on the lowermost tray thereof, so as to permit the insertion of a fresh tray at the bottom, is accomplished. It matters not whether this device has the capacity of lifting the upper trays in the series, so as to open the same for inspection or for any other purposes. So long as it accomplishes the purpose, or possesses the capacity of moving up the whole series of trays from a point on the lowermost tray of the same, so as to permit the introduction of a fresh tray, it is, in that respect, an infringement of the complainant's patent; nor is this conclusion altered because of any supposed advantages gained by the greater facility afforded by the Grier patent in opening the stack at any point above the lowermost tray for purposes of inspection or otherwise. Thus Mr. Curtis says, in his Law of Patents, (4th Ed.,) § 311, p. 409: "If it accomplishes

some other advantages beyond the effect or purpose accomplished by the patentee, it will still be an infringement, as respects what is covered by the patent, although the further advantage may be a patentable subject as an improvement upon the former invention."

The court, upon the best consideration it can give to this subject, has come to the conclusion that the defendant in this cause has used, in the elevation and suspension of the stack of trays in this drier, mechanical appliances and contrivances which, while they differ somewhat in form from those used by the complainant, are mechanical substitutes and equivalents for the same.

And in the use of the same for the accomplishment of the same results as those produced by the complainant's invention, the defendant has infringed upon the exclusive rights secured to the complainant by his patent No. 190,368.

And the court shall so adjudge, order, and decree.